OPINION *
SHWARTZ, Circuit Judge.
John Mazuka sued Officer Anthony Martine, pursuant to 42 U.S.C. § 1983, for false arrest and false imprisonment in violation of the Fourth Amendment. Martine arrested Mazuka for fleeing and eluding by failing to stop his vehicle when directed to do so. Martine moved for summary judgment, asserting that he was entitled to qualified immunity. The District Court denied Martine’s motion, finding that factual *893 disputes existed concerning whether Mar-tine’s conduct in arresting Mazuka was reasonable. Because the basis for the District Court’s ruling was its correct determination that a factual dispute existed, we lack appellate jurisdiction under the collateral-order doctrine and will dismiss this appeal.
I[1]
Early in the morning of August 6, 2011, Mazuka was driving home from work and noticed a set of headlights off to his right at an intersection. He soon noticed the same set of headlights behind him and realized that they belonged to a police car. Martine, who was driving the police car, activated his emergency lights,[2] but Mazu-ka continued on. After Mazuka drove half a mile without pulling over, Martine turned on his siren. Mazuka asserted that he “did not immediately pull over because he did not see a safe place to do so” and did not believe he could pull over onto someone else’s property. App. 12a-3a. Instead, Mazuka slowed down, turned on his hazard lights and the car’s interior dome light, and drove for another mile before pulling into a parking lot. Two minutes passed between the time Martine turned on the police car’s emergency lights and Mazuka pulled over. Martine arrested Ma-zuka for fleeing and eluding under 75 Pa. Cons. Stat. Ann. § 3733(a), and also charged him with several traffic violations. All charges were dropped at a preliminary hearing.
Mazuka- filed a § 1983 complaint against Martine, alleging, among other things, false arrest and false imprisonment in violation of 'the Fourth Amendment.[3] After discovery, Martine moved for summary judgment. The Magistrate Judge recommended, among other things, that summary judgment be denied on Mazuka’s false arrest and false imprisonment claims because: (1) it was unclear from the evidence whether “Mazuka maneuvered his car in such a manner so as to reflect an intention of avoiding Martine’s direction”; and (2) a possible affirmative defense under the statute, namely Mazuka’s claim that it would have been unsafe for him to pull over immediately, was relevant to whether Martine had probable cause. App. 20a-22a. The Magistrate Judge reasoned that the factual determination of “whether Mazuka could have safely pulled over once Martine activated his police lights and siren ... could cause a reasonable juror to ultimately find that probable cause existed, or, alternatively, it could cause this Court to ultimately conclude that qualified immunity is applicable.” App. 28a.
The District Court adopted this portion of the Magistrate Judge’s Report and denied the motion. Martine appeals.
II
A
The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction “to determine [our] own jurisdiction,” United States v. Ruiz, 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002), and “exercise de novo review over an argument *894 alleging a lack of appellate jurisdiction,” Montanez v. Thompson, 603 F.3d 243, 248 (3d Cir. 2010). While our appellate jurisdiction under 28 U.S.C. § 1291 is generally limited to appeals from district courts’ final orders, § 1291 also permits us to review “certain collateral orders ... because they finally determine claims of right too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.” Forbes v. Twp. of Lower Merion, 313 F.3d 144, 147 (3d Cir. 2002) (internal quotation marks and alteration omitted).
Orders immediately appealable under this “collateral-order doctrine” include the ■denial of a defendant’s motion for summary judgment on qualified immunity grounds, “because the entitlement [to qualified immunity] is an immunity from suit rather than a mere defense to liability and is effectively lost if a case is erroneously permitted to go to trial.” Id. (emphasis in original) (internal quotation marks and alterations omitted). Such appeals may be taken, however, only to the extent that the defendant’s purported entitlement to qualified immunity turns on an issue of law. Id. We may not consider on interlocutory appeal “whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove” or entertain an argument “that a trial judge erred in denying a qualified-immunity summary judgment motion because the judge was mistaken as to the facts that are subject to genuine dispute.” Id. (internal quotation marks omitted).
B
Qualified immunity is an affirmative defense that shields government officials “from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (internal quotation marks and citation omitted). To overcome qualified immunity, a plaintiff must point to evidence “showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.” Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (internal quotation marks and citation omitted).
A clearly established right is one that is “sufficiently clear that every reasonable official would have understood that what he is doing violates that right.” Mullenix v. Luna, — U.S. —, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (internal quotation marks and citation omitted). The right implicated in this case is the right to be free from arrest without probable cause, which, despite its breadth, is a bedrock constitutional principle and a clearly established right. See U.S. Const. amend. IV; Kelly v. Borough of Carlisle, 622 F.3d 248, 256 (3d Cir. 2010) (“[I]t [is] clearly established that an arrest [can] be made only on the basis of probable cause.”); Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) (“[T]here is no question that the right at issue, namely, the right to be free from arrest except on probable cause, was clearly established at the time of Orsatti’s arrest.”). Having identified the clearly established right at issue here, we next address whether there are disputed issues of fact that need to be resolved to determine if Mazuka’s right to be free of arrest without probable cause has been violated.
Martine arrested Mazuka for violating Pennsylvania’s fleeing and eluding law, 75 Pa. Cons. Stat. Ann. § 3733(a). A violation of § 3733(a) occurs when a driver “willfully fails or refuses to bring his vehicle to a stop, or ... otherwise flees or attempts to *895 elude a pursuing police officer,” after being “given a visual and audible signal to bring the vehicle to a stop.” Id.
As the District Court noted, the undisputed facts show that after Martine activated his lights, Mazuka did not immediately pull over, but did reduce his speed, activate his hazard lights, and ultimately turn on his interior dome light. Mazuka also testified that there was no safe place to immediately pull over, and submitted photographs of the roadway that he contends support his claim. Putting aside whether this gives rise to an affirmative defense under the statute,[4] when viewed by a reasonable juror in the light most favorable to Mazuka, his ability to safely pull over after Martine first activated his lights is a disputed question of fact which strikes at the heart of whether a reasonable officer could have had probable cause to believe Mazuka was fleeing or attempting to elude Martine, as opposed to simply looking for a place to safely pull over. Cf. Reiff v. Marks, No. 08-CV-5963, 2011 WL 666139, at *8 (E.D. Pa. Feb. 23, 2011) (finding probable cause existed where driver made several turns and engaged in evasive driving after police lights were activated). Because this factual dispute was a proper basis for denying summary judgment, we lack jurisdiction to consider this appeal.[5]
III
For the foregomg reasons, we will dismiss the appeal.

 This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

. The following facts are drawn from the District Court’s statement of facts, which we must accept "as given’’ in this interlocutory appeal. Walker v. Horn, 286 F.3d 705, 707 (3d Cir. 2002).

. According to Martine’s affidavit of probable cause, Mazuka was speeding and had crossed into the path of oncoming traffic, which both violate Pennsylvania’s traffic laws.

.Mazuka also filed claims against Martine and the Rice Township Police Department that are not relevant to this appeal.

. The statute provides that “[i]t is a defense to prosecution under this section if the defendant can show by a preponderance of the evidence that the failure to stop immediately for a police officer’s vehicle was based upon a good faith concern for personal safety[,]” 75 Pa. Cons. Stat. Ann, § 3733(c) (2) & (iv) (2006), and sets forth several factors a court may consider to determine if the defendant met this burden, including "[w]hether the defendant stopped at the first available reasonably lighted or populated area.” Id.

. Because we have concluded that there is an issue of fact concerning the existence of probable cause, we need not address Mazuka’s argument that there is a clearly established right to have an officer, as part of his probable cause determination, consider whether an affirmative defense negates the existence of probable cause. We do note, however, that Martine’s affidavit of probable cause makes clear that he was aware of the affirmative defense and memorialized facts concerning it, thereby suggesting that he considered the facts available to him that could support the statutory affirmative defense. App. 88a (stating that Mazuka “had numerous safe places to pull his vehicle to the side of the road but .refused to do so”).